## KRAUTHOFF v. KANSAS CITY JOINT-STOCK LAND BANK OF KANSAS CITY, MO., et al. (two cases).

## RAAB v. SAME.

Circuit Court of Appeals, Eighth Circuit. November 23, 1927.

Rehearing Denied with Modification February 10, 1928.

Nos. 7874, 7875, 7939.

Constitutional law ⟨⟩74—Court held unauthorized to interfere with Federal Farm Loan Board, acting through receiver, winding up insolvent joint-stock land bank; "federal agency;" "public officer" (Farm Loan Act [12 USCA §§ 641, 831, 961, 963]; National Banking Act).

Court held unauthorized to interfere in winding up of affairs of insolvent joint-stock land bank, organized under Farm Loan Act (12 USCA c. 7 [sections 641–1021]), by appointment of receiver, where Federal Farm Loan Board had appointed receiver pursuant to sections 641, 831, 961, 963, since bank was "federal agency," and receiver appointed by board is "public officer"; procedure under chapter 7 being in substance like that of National Banking Act (Act June 3, 1864 [13 Stat. 99]).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

Appeal from the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Separate suits by Edwin A. Krauthoff and F. Henry Raab against the Kansas City Joint-Stock Land Bank of Kansas City, Mo., and others. Motions to dismiss the bills were sustained, and plaintiffs appeal. Modified and affirmed.

Edwin A. Krauthoff, of Kansas City, Mo., Bruce W. Sanborn, of St. Paul, Minn., W. F. Lilleston, of Wichita, Kan., and Ernest D. Wilson, of Kansas City, Mo. (Sanborn, Graves & Ordway, of St. Paul, Minn., and Vermilion, Evans, Carey & Lilleston, of Wichita, Kan., of counsel), for appellants.

Rhodes E. Cave, of St. Louis, Mo., Herman M. Langworthy, of Kansas City, Mo., and Thomas S. McPheeters, of St. Louis, Mo. (Bryan, Williams & Cave, of St. Louis, Mo., and Langworthy, Spencer & Terrell, of Kansas City, Mo., of counsel), for appellees.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. The Kansas City Joint-Stock Land Bank of Kansas City, Missouri, was organized under the Farm Loan Act. 12 USCA c. 7. It was organized pursuant to the provisions of the Act by the Federal Farm Loan Board, which board was created by the Act, and after its organization the board had authoritative direction over its operations. The administration of the whole Act was entrusted by Congress to the direction of the board (section 641), and in addition to specific powers given to it, section 831 provides that the board may "exercise such incidental powers as shall be necessary or requisite to fulfill its duties and carry out the purposes of this chapter." Section 963 provides: "Upon default of any obligation, federal land banks and joint-stock land banks may be declared insolvent and placed in the hands of a receiver by the Federal Farm Loan Board, and proceedings shall thereupon be had in accordance with the provisions of this section [subdivision] regarding national farm loan associations." Section 961 provides for the appointment of a receiver by the board for a national farm loan association, and says: "Such receiver, under the direction of the Federal Farm Loan Board, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, with the approval of the Federal Farm Loan Board, or upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like approval or order, may sell all the real and personal property of such association, on such terms as the

Federal Farm Loan Board or said court shall direct."

The board found the joint-stock bank to be in default of its obligations, that it was insolvent, and in May, 1927, placed it in the hands of William R. Compton as its receiver. Shortly thereafter appellant Krauthoff, as the owner of bonds issued by the bank, and appellant Raab, as one of its stockholders, separately brought these suits, alleging the appointment of Compton, that he had qualified as receiver and was in possession, that farm mortgages belonging to the bank, to the amount of about $46,000,000 and United States Government bonds to the amount of $770,000 had been deposited by the bank with C. A. Ryker, the duly appointed Farm Loan Registrar, in Federal Loan Bank District No. 9, to secure the payment of approximately $44,000,000 in bonds issued by the bank and then outstanding, that the records of the bank had not been accurately kept and it would be impossible without a discovery and accounting to ascertain its true condition, that some of the mortgages deposited with Ryker had been foreclosed and title to farms taken in some one for the bank and the nature of these proceedings cannot be ascertained without a discovery, that a large amount of interest due on said farm mortgages is in default and there is controversy whether said interest should be collected by Ryker or Compton and a court of equity should determine that controversy, that it will become necessary to foreclose many of the mortgages and the question has arisen as to who should conduct the foreclosures and pay the expenses thereof, and to avoid a multiplicity of complications and litigation a court of equity should through its receiver take possession of said securities, direct how the mortgage debts should be liquidated and the funds, both principal and interest, disposed of, that Ryker, under the direction of the Federal Farm Loan Board, has clipped certain interest coupons from the United States Government bonds hypothecated to secure the bonds issued by the bank and delivered them to Compton and it will be the duty of Compton to pay the amounts thereof when collected into the Treasury of the United States under the terms of the Act, that Compton's authority is limited by section 961, supra, to collecting the bank's assets, compounding its debts and selling its property if necessary, and then to paying the proceeds into the United States Treasury, subject to the order of the Federal Farm Loan Board, that then the money could not be paid out except upon an appropriation by an Act of Congress and thus the Act is in conflict with the Fifth Amendment. It is further alleged that many controversies will arise in the settlement of the insolvent estate involving justiciable issues between the parties at interest, that the Act imposes on each stockholder an individual liability to the amount of the stock owned at the par value thereof, in addition to the amount paid in as represented by his shares, and there is no provision in the Act by which the Federal Farm Loan Board or its receiver can make assessments against stockholders and collect the amounts for which they are liable. Other allegations are made of the kind that have been stated, all tending to show, as claimed, a denial of the constitutional right to a judicial determination at first occurrence of the many controversies that will arise in settling the insolvent estate. Each of the bills prays for the appointment of a receiver by the court, that the receiver so appointed oust Compton and the board and take possession of all the bank's property and administer it under the direction of the court as the rights of all parties interested may demand. Motions to dismiss the bills were sustained and the appeals challenge that action.

But for omissions in literal terms of specific authority to the Federal Farm Loan Board to allow claims against insolvent banks, declare and pay dividends on those claims, levy assessments on stockholders and collect them, we find no substantial difference between this Act and the National Banking Act (Act June 3, 1864 [13 Stat. 99]) in relation to the closing and settlement of their affairs when the banks become insolvent. In each the Executive Department is given control. We think this Act clearly intends that a procedure like that provided in the National Banking Act shall in substance be followed. There the Comptroller declares the insolvency and appoints a receiver, here the board; in both the assets are to be converted into cash by the receivers and paid into the Treasury; there the Comptroller causes claims to be presented after notice, declares dividends on those allowed and pays them by giving orders on the Treasury, here the section (962) which directs the receiver to pay over all moneys collected to the Treasurer of the United States says that the moneys so paid over shall be subject to the order of the Federal Farm Loan Board. It cannot be thought that there was any other purpose in making the assets of the insolvent bank subject to the order of the board than the use of them,—and the stockholder's liability if necessary,—in settlement of the insolvent estate,—to pay the bank's debts; nor could those debts be paid

until its creditors and the amount due each should be ascertained. A receiver appointed by the Comptroller must report to him, and a receiver appointed by the board must report to it. In each instance the receiver, like a court receiver, is an agent and receives his instructions from and is guided by the appointing authority. The Comptroller is the chief officer of a bureau in the Department of the Treasury; section 651 of chapter 7 creates a Federal Farm Loan Bureau in the Department of the Treasury and places it under the supervision of the Federal Farm Loan Board. A part of section 831 quoted supra, defining the powers of the board, gives it such incidental powers as are necessary or requisite to fulfill its duties and carry out the purposes of this chapter. Thus the board's authority to fully settle the bank's affairs is not left to implication. Its assets paid into the Treasury are subject to the board's orders. The creditors are entitled to them pro rata on disbursement to the extent of their claims, and they can be paid only by the orders of the board on those funds. The Act gives the board the necessary and requisite power in fulfillment of that duty. The bank was a federal agency. Smith v. Kansas City Title Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577. The Act under which it was created and authorized to transact business, subject to the supervision and control of the board, prescribes, as we view it, the way in which it should be wound up in the case of insolvency. For that purpose the board took charge of it, as does the Comptroller of an insolvent national bank. A receiver appointed by the board is a public officer, as much so as a receiver appointed by the Comptroller. United States v. Weitzel, 246 U. S. 533, 38 S. Ct. 381, 62 L. Ed. 872. At the time these suits were brought the board through its receiver was in possession discharging the duty imposed upon it by Congress. We think we have no right to interfere in its discharge of that duty. Early in the administration of the National Banking Act it was contended that the Comptroller, an executive officer, was, in discharging his duties, attempting to exercise judicial functions which belonged exclusively to the courts. The contention was held to be without merit. See Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598. That seems to us to be the substance of the contention here. It may be that questions will arise during receivership that will require judicial determination; but that is far short of ousting the board and its receiver by the appointment of a court receiver. The bill shows that Compton had already applied to the court below for instructions on some matters that had arisen in administration, and we have no reason to doubt that like applications will be made if occasion requires it.

We think there was no error in the orders appealed from and they are

Affirmed.

## On petition for rehearing.

PER CURIAM. This cause came on to be heard on the petition for a rehearing filed by counsel for appellant.

On Consideration Whereof, It is now here ordered by this Court that the decree of this Court entered on November 28, 1927, be, and it is hereby, modified and amended so as to provide that the dismissal of the action in the District Court of the United States for the Western District of Missouri, be without prejudice and thus modified the decree of said District Court will stand affirmed by this Court in accordance with the opinion heretofore filed on November 23, 1927.

And it is further ordered that in all other respects the petition of appellant for a rehearing in this cause, be, and the same is hereby, denied.