## GREENE v. WHEELER.

Circuit Court of Appeals, Seventh Circuit.
December 13, 1928.

No. 4065.

Edwin S. Mack, of Milwaukee, Wis., for appellant.

J. V. Quarles, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVAN A. EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. The Federal Farm Loan Board (here called Board) made an assessment against the stockholders of an insolvent joint-stock land bank under section 812, tit. 12, United States Code Annotated.[1] The District Court sustained the demurrer to the complaint, and plaintiff elected to stand on his complaint. The complaint alleged an assessment and direction by the Board to the receiver to collect.

Appellee's position is: (a) That the Board is without power to make such assessment or enforce the personal liability of stockholders; (b) that a receiver has no legal right to maintain this action.

It is first urged that the powers of the Board are limited to those enumerated in section 831, plus such supervisory powers as are incident thereto, set out in clauses (i) and (j) thereof. So many powers are given to the Board by the act which are not found in section 831 that we must hold the powers of the Board are not so limited. To illustrate: Power to discharge certain employees is found in section 831, but no power of appointment is there given, the power to appoint some of the officers there specified being found in section 656; the very important power to find and declare insolvency and to appoint receivers, given by section 961, is not found in section 831.

The meaning of the provisions of the act must be gained, not only from its words, but also from its purposes. The purposes stated in the title are:

"To provide capital for agricultural development, to create standard forms of investment based upon farm mortgage, to equalize rates of interest upon farm loans, to furnish a market for United States bonds, to create Government depositaries and financial agents for the United States, and for other purposes."

The act provides the machinery by which the purposes of the act are to be accomplished. From those purposes, it appears that Congress did not intend merely to pass a law under which federal land banks, national loan associations, and joint-stock land banks might be organized, but that it also purposed to see to it that the whole undertaking, so vast that it was to be available in every community in every state of the Union, was at all times conducted under the supervision, direction, and control of the Board, during the organization and establishment of those instrumentalities and during their successful operation.

The act shows that it was anticipated that there would be cases of insolvency and failure; that in such cases the association or bank would cease to function normally; that, if creditors, probably widely scattered, were to be protected and debtors compelled to meet their obligations, some agency, other than the bank or the association, would have to intervene. That it was one of the purposes of the act to extend the supervision of the Board so as to cover such cases and supply such agency is evidenced by the fact that it was authorized to find and declare insolvency and to appoint receivers. The moneys collected by the receiver and deposited in the Treasury are subject to the order of the Board. As one of the purposes of the act, it was provided that, in addition to the capital stock and general assets, there should be an individual liability of stockholders, available for the payment of debts in case of insolvency.

Section 651 provides that there shall be established in the Treasury Department a Federal Farm Loan Bureau, "charged with the execution of this chapter." To "execute" means "to follow out into effect" (Oxford Dict.); "to carry through so as to effect, pursue to the end, accomplish, finish, put into force (Standard Dict.). If one of the purposes of the act is to carry insolvent concerns through liquidation and pay their debts, then "execution" cannot be complete until that purpose has been accomplished. Inasmuch as the Federal Farm Loan Bureau can only act or find expression through the Board, it seems to follow, necessarily, that the provision in section 651, that the act shall be executed under the general supervision of the Board, must mean that the Board is to execute the act.

Speaking of the Federal Farm Loan Act, section 641 provides: "Its administration shall be under the direction and control of" the Board. "Administration" means the act of administering, especially direction or oversight of any office, service or employment, etc., management of public affairs. "Direction and control" import authority to command what shall be done, and to require obedience to those commands. It is to be noted that it is not only solvent and going concerns that are placed under the supervision, direction, and control of the Board, but the whole act is to be executed and administered under the supervision, direction, and control of the Board. These provisions can only mean that there is the right in the

[1] Sections referred to herein, unless otherwise designated, will be found in title 12, U. S. Code Ann. For original Farm Loan Act, see 39 U. S. Statutes at Large, p. 360.

Board to exercise those powers until the full accomplishment of the purposes of the act, one of which is to pay the debts of insolvent concerns. Cook County Nat. Bk. v. U. S., 107 U. S. 445, 448, 2 S. Ct. 561, 27 L. Ed. 537.

Appellee's argument that the Board is without power to make such assessments is based wholly upon the assumption that its powers are only those found in section 831, and that the provisions in paragraphs (i) and (j) of that section do not relate to any other supervision than that incidental to the powers expressly enumerated in that section. Appellee concedes that, if Congress had not so enumerated the powers, but had made a general grant, covering the entire field, there would be force in appellant's argument that the power to assess is incidental to the general powers of the Board. Section 831 (i) and (j) reads:

"(i) To exercise general supervisory authority over the Federal land banks, the national farm loan associations, and the joint-stock land banks herein provided for. * * *

"(j) To exercise such incidental powers as shall be necessary or requisite to fulfill its duties and carry out the purposes of this chapter." [2]

It would be a very narrow construction to hold that the powers in (i), "to exercise general supervisory authority" mean that the Board has supervisory authority in respect only to the things enumerated in section 831, and that it has no supervisory authority with respect to the many other powers given in the act. It would be a perversion of the language of (j) to hold that the Board was given incidental powers as to the specific things mentioned in section 831, but that it was given none with respect to the many powers granted to it in the other sections of the act.

We have above pointed out: (a) That the powers in section 831 are far from being all of the powers vested in the Board by the act; (b) that in sections 641 and 651 there are to be found, first, the general provision that the administration of the act shall be under the direction and control of the Board, and, second, that the execution of the act, charged upon the Farm Loan Bureau, shall be under the general supervision of the Board.

Under the National Banking Act, called Banking Act, there is no specific provision

[2] In the original act, the last word in clause (j) is "act."

for the making of an assessment. That matter was before the Supreme Court in 1869 in Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476, and the right was upheld.

Appellee's contention that the receiver has no right to maintain this suit is based very largely upon the fact that Congress, in section 961, copied a part, and omitted a part, of section 192 of the Banking Act. Below are found those parts of the two sections brought under discussion by appellee (the parts in italics in the Farm Loan Act are not found in the Banking Act, and the italicized words at the end of the quotation from the Banking Act were omitted from the Farm Loan Act):

| FARM LOAN ACT: | BANKING ACT: "Such |
|---|---|
| "Such receiver, under the direction of the *Federal Farm Loan Board,* shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, *with the approval of the Federal Farm Loan Board,* or upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like approval or order, may sell all the real and personal property of such association, on such terms as the *Federal Farm Loan Board or said* court shall direct." | receiver, under the direction of the *Comptroller,* shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; *and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."* |

It is to be noted that section 961, a part of which is quoted above, by its terms relates only to National Farm Loan Associations, but by the provisions of section 963 is made to apply to joint-stock land banks. It is also to be noted that sections 961 to 965 are section 29 of the original Farm Loan Act (39 Stat. 360), and the words in section 963, "and proceedings shall thereupon be had in accordance with the provisions of this section regarding national farm loan associations," would be meaningless if not read with reference to original section 29, because there are no such provisions in section 963.

It is true the omission standing alone may indicate an intention to withhold from receivers under the Farm Loan Act the right of initiative in bringing suits against stockholders, given in the Banking Act, and, if we found no other provision authorizing the Board to direct such actions, appellee's contention would prevail. While a court may not read into a statute language or purposes not there found, yet, if that common sense rule laid down in U. S. v. Katz, 271 U. S. 354,

46 S. Ct. 513, 70 L. Ed. 986, is to control, such interpretation must be given to the words employed, if it can reasonably be done, as will enable the instrumentality employed (in this case, the Board) to effectively accomplish all the purposes of the statute. We do not think that, because the right in question was not given to the receiver, as it was in the Banking Act, it necessarily follows that the Board does not have the power.

There are many differences between the provisions relating to the powers of the Comptroller, found in the Banking Act, and those in the Farm Loan Act relating to the powers of the Board. The Banking Act adopted the method of enumerating the powers of the Comptroller, and, although it has been held that he has incidental implied powers, for instance, the power to fix and direct the payment of the individual liability of stockholders (Casey v. Galli, 94 U. S. 673, 681, 24 L. Ed. 168), we do not find in the Banking Act any provision like that in section 641, namely "its administration shall be under the direction and control of the * * * Board," or like the provisions of section 831 (i) and (j), set out above. We find some powers expressly given the Comptroller that are not so expressly given to the Board.

It is pointed out that section 192 of the Banking Act provides that the Comptroller shall give notice to prove claims and that section 194 of that act provides for an allowance of claims, payment of dividends, and return of any surplus to the stockholders, and it is argued that, because those provisions are not in the Farm Loan Act, it was intended that the receiver should have no power to enforce the stockholders' liability. We cannot agree that that is a legitimate conclusion, because the presentation and allowance of claims, the payment of dividends, and the return of any surplus are necessary details in the administration of an insolvent estate, regardless of the stockholders' liability. Obviously, we think, the power to do those things was vested in the Board.

We find no purpose in the Farm Loan Act to give to the Board narrower powers than those given the Comptroller under the Banking Act. On the contrary, in section 961 is found a provision broadening the Board's powers. It gives to the Board and the court control over certain acts that are by section 192 of the Banking Act wholly under the control of the court.

In Kennedy v. Gibson, 8 Wall. 498, 505 (19 L. Ed. 476), the court said:

"The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it."

All of those things were true, regardless of the question as to whether the receiver was authorized by the act to bring a suit to establish the individual liability of the stockholders.

In Richmond v. Irons, 121 U. S. 27, 48, 7 S. Ct. 788, 797 (30 L. Ed. 864), the liquidation of a national bank's affairs was involved. The court said:

"In the liquidation of such an association, those entrusted with its management occupy the relation of trustees, first for creditors, and the terms of that trust, implied by law, require them to reduce the assets of the association to money or its equivalent, and to pay out those assets or their proceeds equally among creditors."

And, again at page 49 of 121 U. S. (7 S. Ct. 798):

"In the case of involuntary liquidation under the supervision of the Comptroller of the Currency, the receiver appointed by him is authorized and required, not only to collect and apply the proper assets of the bank to the payment of its debts, but also, so far as may be necessary, to enforce the individual liability of the shareholders. It thus appears that the enforcement of this liability is a part of the liquidation of the affairs of the bank; at least, so closely connected with it as to constitute but one continuous transaction. When, in the case of voluntary liquidation, the proceeding is instituted by one or more creditors for the benefit of all, by means of the jurisdiction of a court of equity, there seems to be no reason why the nature of the proceeding should be considered as changed. The intention of Congress evidently was to provide ample and effective remedies in all the specified cases for the protection of the public and the payment of creditors, by the application of the assets of the bank and the enforcement of the liability of the stockholders. Admitting that this liability is not strictly an asset of the bank, because it could not be enforced for its benefit as a corporation nor in its name, yet it is treated as a means of creating a fund to be applied with

and in aid of the assets of the bank towards the satisfaction of its obligations. The two subjects of applying the assets of the bank and enforcing the liability of the stockholders, however otherwise distinct, are by the statute made connected parts of the whole series of transactions which constitute the liquidation of the affairs of the bank."

We are of opinion that, without specific provision for suit by the receiver against the stockholders, the purpose of the Farm Loan Act was to provide a continuous, effective, and complete means of liquidating the debts of insolvent concerns under the supervision, direction, and control of the Board, and that the language in Casey v. Galli, 94 U. S. 673, 681 (24 L. Ed. 168), applies:

"It is * * * sufficient * * * that the comptroller has ordered that each stockholder shall pay to the receiver the par of his stock. This order cannot be controverted in a suit against the stockholder. It is conclusive upon him, and makes it his duty to pay (citing Kennedy v. Gibson, 8 Wall. 498 [19 L. Ed. 476])."

We are of opinion that the Board had the right to make the assessment and direct the receiver to bring this suit.

The judgment of the District Court is reversed.

