## KRAUTHOFF v. KANSAS CITY JOINT-STOCK LAND BANK OF KANSAS CITY, MO., et al. *

Circuit Court of Appeals, Eighth Circuit.
February 20, 1929.

No. 8151.

Edwin A. Krauthoff, of Kansas City, Mo. (Bruce W. Sanborn, of St. Paul, Minn., Price Wickersham and Ernest D. Wilson, both of Kansas City, Mo., and Sanborn, Graves & Andre, of St. Paul, Minn., on the brief), for appellant.

Cyrus Crane, of Kansas City, Mo. (E. F. Halstead, of Kansas City, Mo., on the brief), for appellees.

Massey Holmes and Reed, Holmes & Taylor, all of Kansas City, Mo., filed brief as amicus curiæ.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

KENYON, Circuit Judge. The Kansas City Joint-Stock Land Bank, organized under the Federal Farm Loan Act, became insolvent in 1927, and was by the Federal Farm Loan Board, under the provisions of the Federal Farm Loan Act (12 USCA c. 7, §§ 961 and 963), placed in the hands of a receiver, who took possession of all the assets of the bank of every description. Appellant after that time purchased certain of the bonds of said bank for the express purpose, as admitted in his argument in this court, of bringing suits thereon for himself and for clients whom he hoped to secure. Two of these he brought as plaintiff in the District Court of the United States for the Western District of Missouri, the numbers of which in this court are 7874 and 7939, and will be designated herein by those numbers, one in the District Court of the United States for the District of Kansas (No. 7938, this court), and one was brought by a stockholder named Raab in the District Court of the United States for the Western District of Missouri, in which appellant was attorney for the plaintiff (No. 7875, this court). The defendants were substantially the same in all of these cases. The real object and purpose of these four suits was to oust the receiver appointed by the Federal Farm Loan Board, and to substitute a receiver appointed by the court to take charge of the assets. The previous suits were dismissed by the trial courts, and their action

*Rehearing denied May 7, 1929.

was affirmed by this court (23 F.(2d) 71 and 73), with a modification in one of them, upon petition for rehearing, that the dismissal by the District Court be without prejudice.

This court decided in these cases that the act under which the Kansas City Joint-Stock Land Bank was created prescribed the manner in which it should be wound up in case of insolvency; that the situation was similar to the insolvency of a national bank; that the receiver appointed by the board was a public officer, and that he was in possession of the assets in discharging his duty at the time the suits were brought; and that the court had no right to interfere with such receiver in the proper discharge of his duties. In cases numbered 7874, 7875 and 7939 [23 F.(2d) 71], argued and decided together, this court said that questions might arise during receivership that would require judicial determination.

Appellees urge that every question involved in the present case has been determined in some of the previous ones between substantially the same parties. We have examined appellant's brief of 198 pages, which evidences much research and philosophical meditation, to discover what, if any, issues are now presented that have not been passed on by this court in some of these cases.

As a type of the various cases, we refer to case No. 7874. There the prayer of the petition is almost identical with the prayer for relief in this case. In that case appellant asked judgment against the Land Bank in the sum of $5,000, with interest, and for a lien upon the assets in the hands of the registrar, Ryker; that he have judgment for his interest in the trust fund, and that the same be ascertained; that the court appoint a receiver to take possession of the bank's property of every kind and character, including that pledged as security for the bonds; that the total amount of bonds be ascertained, together with ownership; that an accounting and discovery be had of all transactions of the Kansas City Joint-Stock Land Bank, or of any individuals or corporations in connection therewith. These matters are all covered by the prayer in this suit, which, however, asks in addition that the receiver to be appointed be invested with authority in equity to enforce the outstanding stockholders' liability due and owing by the stockholders of the Kansas City Joint-Stock Land Bank of Kansas City.

This question was, however, referred to in the former opinions of this court, and was in fact the basis of suit No. 7939. On that subject this court said (Krauthoff v. Kansas City Joint-Stock Land Bank, 23 F.(2d) 71–73): "It cannot be thought that there was any other purpose in making the assets of the insolvent bank subject to the order of the board than the use of them—and the stockholder's liability, if necessary—in settlement of the insolvent estate, to pay the bank's debts; nor could those debts be paid until its creditors and the amount due each should be ascertained. A receiver appointed by the Comptroller must report to him, and a receiver appointed by the board must report to it."

Appellant devotes some 74 pages of his brief to the question of pledged assets. This question was in case No. 7938, appeal from the District Court of Kansas. Judge Pollock, in the District Court, said that the "receiver is entitled to the possession of the securities pledged back of the bonds now outstanding, either in this jurisdiction or any other jurisdiction or location, and in my opinion they are no more subject to be wrested from his possession and control by a receiver appointed by this court than by any other person. As the law under which the bonds owned by plaintiff were issued so provides, it must be held, in my judgment, this court is powerless at the suit of plaintiff, who, by the very act of purchasing the bonds, consented a receiver, appointed as was defendant Compton, should, in case of insolvency of the bank, take possession and hold the same to be applied as the law directs." This court upheld that decision and in a per curiam opinion [23 F.(2d) 73] said: "It [the suit] was brought by a creditor who owned bonds issued by Kansas City Joint-Stock Land Bank of Kansas City, Mo., in his own behalf and in behalf of all other creditors who might wish to join in the suit. The bill asks the court to appoint a receiver of the farm mortgages and United States government bonds pledged with C. A. Ryker, registrar, as security for the payment of the bonds. Ryker resides at Wichita, Kan., and the suit was brought in that district, because that was the situs of the property that appellant sought to have impounded in receivership. The ultimate relief sought was the same as that in the other cases." A petition for rehearing therein was denied. So it appears the question of pledged collateral and its protection was before this court in the prior cases.

It is entirely within bounds to say that every question presented on this appeal has been passed on by this court in one or the other of the former appeals in cases between the same plaintiff (appellant here) and sub-

stantially the same defendants (changes in defendants being merely nominal). The only difference in this case is that, while in the other suits brought by the appellant he sued on five bonds, here he adds an additional bond of $1,000, on which it is alleged that the interest due is unpaid.

In case No. 7874 this court said: "The board found the Joint-Stock Bank to be in default of its obligations, that it was insolvent, and in May, 1927, placed it in the hands of William R. Compton as its receiver." Therefore it appears that, when that case was considered, there had been defaults upon the part of the bank in the payment of its obligations, and in the bill in case No. 7874 is this allegation: "Plaintiff further states that on or about the 1st day of May, 1927, the Kansas City Joint-Stock Land Bank of Kansas City, Mo., made default of its outstanding federal loan bonds, the interest of which had matured on that date." So that, while the specific question of default in interest on this bond was not before the court in the former appeals, the cases were considered on the theory that defaults in the obligations of the Land Bank had occurred.

Notwithstanding the fact that appellant in its reply brief states that it does not in this action seek to substitute a court receivership for the statutory receivership, and that it is asking the court to compel a statutory receiver to fully discharge his duties, and to appoint a receiver only in case the present receiver does not discharge his duty as receiver, as ordered by the court or as lacking in the power to do so, we are satisfied that the whole purpose of this bill, as in the other cases, shows that this is exactly what has been and is sought to be done. The only way that appellant can work out the theories he has advanced in his brief is to secure the displacement of the present receiver and to have one appointed by the court. This suit is to all intents and purposes the same as case No. 7874; though perhaps dressed in a slightly different garb, it is merely an ingenious attempt to retry questions that were supposed to have been determined in that case.

This case would end here by application of the doctrine of res judicata Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Radford v. Myers, 231 U. S. 725, 34 S. Ct. 249, 58 L. Ed. 454; Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148; United States v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262; North Carolina R. R. v. Story, 268 U. S. 288, 45 S. Ct. 531, 69 L. Ed. 959; Union Cent. Life Ins. Co. v. Drake [C. C. A.] 214 F. 536) were it

not that, on rehearing in cases numbered 7874, 7875, and 7939, this court said: "On consideration whereof, it is now here ordered by this court that the decree of this court, entered on November 28, 1927, be, and it is hereby, modified and amended, so as to provide that the dismissal of the action in the District Court of the United States for the Western District of Missouri be without prejudice, and, thus modified, the decree of said District Court will stand affirmed by this court in accordance with the opinion heretofore filed on November 23, 1927."

Appellant urges in its brief that the court modified the affirmance by providing that the dismissal be "without prejudice," thus recognizing that in another case involving the same subject-matter other issues might be presented. It is doubtful if the binding effect of the doctrine of res judicata was not destroyed by the modification of the court upon rehearing. We do not think the court intended that the useless performance of trying the same case over again was to be indulged in. It had tried in its opinion to guard against any contention that its holding limited a court of competent jurisdiction from consideration of questions that might arise during the receivership.

We have examined the petition for rehearing in Case No. 7874, and the same questions as argued upon the hearing were reiterated there, but it was especially called to the attention of the court that it had not made clear whether or not defendants would be subject to suit under proper circumstances calling for judicial interference, and we think that is what the court desired to make clear in granting the modification of the opinion. However, the language of the modification is broad, and this court in Harrison v. Remington Paper Co., 140 F. 385, 399 (3 L. R. A. [N. S.] 954, 5 Ann. Cas. 314), said: "Rulings and decisions in the course of an action which is finally dismissed without prejudice adjudge nothing, because the final judgment by its terms is that nothing has been adjudicated, and this fact is the only res adjudicata. Such a judgment determines that the parties are left as free to litigate every issue in the action dismissed as they would have been if it had never been commenced."

In No. 7938, the case from Kansas, no rehearing was granted; so the matters there determined stand as res judicata. While probably the holding of this court in Nos. 7874 and 7939 cannot technically be regarded as res judicata, because of the order on rehearing, yet the reasoning of the court is entirely in accord with our present conclu-

sions as to the matters there discussed and here involved.

As to the question of a court receiver to enforce the stockholders' liability under the Federal Farm Loan Act, since the former decisions, the Circuit Court of Appeals of the Seventh Circuit, in the case of Green, Receiver, v. Wheeler, 29 F.(2d) 468, decided December 13, 1928, has held that a receiver appointed by the Federal Farm Loan Board has the power to make an assessment against the stockholders, similar to the power of the Comptroller under the National Banking Act (12 USCA § 192) to make assessments against stockholders of a bank, and said: "We are of opinion that, without specific provision for suit by the receiver against the stockholders, the purpose of the Farm Loan Act was to provide a continuous, effective, and complete means of liquidating the debts of insolvent concerns under the supervision, direction, and control of the board." With this we agree.

On the question concerning pledged securities and the protection of pledged collateral, we have before referred to the holding of the Kansas District Court, affirmed in this court in No. 7938, which opinion has been in no way modified. On page 159 of appellant's brief, he states: "The appointment of a receiver is merely incidental to the relief prayed by the plaintiff. The assets for which the appointment of a receiver is prayed, are the assets which are pledged for the payment of the bonds, assets in which the defendant Langworthy, as statutory receiver, has no right of possession, unless and until the debt for which such assets were pledged has been paid. It is not contended in the present suit that the District Court has the power to appoint a receiver for any assets within the lawful possession of the statutory receiver under the Federal Farm Loan Act."

We think there is lack of merit in this contention. The Federal Farm Loan Act is a broad one, seeking to carry out a public purpose. It provides, section 29 (USCA tit. 12, c. 7, § 961): "Such receiver, under the direction of the Federal Farm Loan Board, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, with the approval of the Federal Farm Loan Board, or upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like approval or order, may sell all the real and personal property

of such association, on such terms as the Federal Farm Loan Board or said court shall direct." This provision covers all assets. It is hardly to be presumed that Congress intended in carrying out the purposes of this act to have various receivers for different kinds of assets, resulting merely in inextricable confusion and chaos. The act should be carried out according to its terms, and not lose its efficiency in a maze of philosophical technicalities. It seems to us the act is perfectly plain; that the Farm Loan Board is charged with carrying out its provisions and to see "that the moneys are applied toward the satisfaction of the bonds."

We may say further that we are not impressed with appellant's standing in a court of equity. He purchased his bonds after the board had appointed a receiver, and frankly admits in argument that he did so for the sole purpose of bringing lawsuits and attracting legal business. If appellant, when he purchased the bonds, was in quest of lawsuits, such quest has been entirely successful. He knew, when he made the purchases, that under the provisions of the Farm Loan Act a receiver could be appointed by the Farm Loan Board to take charge of all the assets of the insolvent bank. It was in the bondholder's contract that the receiver, with the approval of the Federal Farm Loan Board, or upon the order of a court of record of competent jurisdiction, could sell the real and personal property of the bank on such terms as the Federal Farm Loan Board or the court should direct. It would seem that appellant was not, therefore, in a position to question the appointment of a receiver by the Farm Loan Board.

We do not mean to say, nor did this court in its previous opinions hold, that no questions could arise in relation to liquidating the affairs of the Farm Loan Bank that might be the subject of judicial determination. The Farm Loan Board and its receiver are not immune from all judicial process or control. Appellant as a bondholder has been denied no rights, and there is no ground for the intervention of a court of equity up to this time. While there are some general allegations of fraud in appellant's bill, nothing is alleged that would constitute fraud, or show that the receiver was not fairly attempting to protect all interests intrusted to him. We think this case is totally without equity and the trial court was right in dismissing the same.

Affirmed.