## GALLAGHER v. CLARK et al.
### No. 4529.

District Court, S. D. Iowa, C. D.
May 26, 1934.

See, also, 5 F. Supp. 547.

Gibson & Stewart, of Des Moines, Iowa, Geo. C. Willson, of St. Louis, Mo., Peyton R. Evans, Gen. Sol., Farm Credit Administration, of Washington, D. C., Herman Langworthy, of Kansas City, Mo., and J. G. Gorman, of Chicago, Ill., for plaintiff.

H. L. Bump, of Des Moines, Iowa, and Vander Ploeg & Heer and Johnston & Shinn, all of Knoxville, Iowa, for defendants.

DEWEY, District Judge.

This cause came on for hearing at Des Moines, Iowa, on the 17th day of May, 1934, on a suit to foreclose a real estate mortgage and the indebtedness of about $15,000, for which the mortgage was given as security, and the answer of the Knoxville Building Company, owner of the real estate, for an offset of the face value of $13,000 of bonds issued by the Chicago Joint Stock Land Bank.

The said Chicago Joint Stock Land Bank was organized July 25, 1917, under the Federal Farm Loan Act of July 17, 1916 (see 12 USCA § 641 et seq.) with an original capital of $250,000 increased to $4,000,000. About October 1, 1932, the corporation became insolvent and the plaintiff herein was appointed receiver under the provisions of the Federal Farm Loan Act.

At the time of his appointment the defendant Knoxville Building Company was the owner of the real estate sought to be foreclosed and at that time was the owner of the bonds for which it seeks an offset in value in this suit.

The note and mortgage declared upon were executed on or about the 20th day of February, 1923, by Charles Clark and Mary E. Clark to the Chicago Joint Stock Land Bank and on or about the 30th day of August, 1932, the defendant Knoxville Building Company acquired the land by warranty deed, subject to the mortgage referred to, and therein assumed and agreed to pay the same. The only defense is as to the right of the set-off above referred to.

In reply to the claim of set-off the plaintiff alleges in substance that the note and mortgage are a part of a trust fund, and, as the bonds are a liability of the Chicago Joint Stock Land Bank, a mutuality of rights does not exist.

The mortgage, in compliance with a provision of the Farm Loan Act, contained the following provision:

"This mortgage is made to said party of the second part as a Joint Stock Land Bank doing business under the 'Federal Farm Loan Act' and the parties hereto agree to be in all respects subject to and governed by the terms and provisions of said Act."

The Federal Farm Loan Act contains complete regulations as to the institution, management, and control of Joint Stock Land Banks, and it was intended by Congress that such banks were to be so supervised and regulated by the Federal Farm Loan Board, which by executive order and legislation in March, 1933, was changed to the Farm Credit Administration, that the banks might be conservatively managed and its creditors protected. Section 641 et seq. title 12, U. S. Code (12 USCA § 641 et seq.).

The main business authorized and permitted to a Joint Stock Land Bank was the making of loans secured by real estate mortgages, and the issuance of farm loan bonds secured by these real estate mortgages.

Before farm loan bonds could be issued by the Joint Stock Land Bank, real estate mortgages were to be deposited with the Farm Loan Registrar for the district in which the bank was located and to be by him held as collateral security for the farm loan bonds. The Federal Farm Loan Board first passed upon the amount of bonds that might be issued by the Joint Stock Land Bank and upon the collateral that was to be retained as security therefor. Thereupon the Farm Loan

Registrar, having the custody of the first mortgages and bonds tendered as collateral security for such issue of bonds, was to retain in his custody these first mortgages and bonds, as selected by the Federal Farm Loan Board, which were to be held as collateral security, and return to the bank owning the same any of the mortgages and bonds which were not so selected and to be held by him as collateral security.

The Joint Stock Land Bank prior to the issue of these farm loan bonds was to transfer to the registrar by assignment in trust all the first mortgages and bonds thus selected by the Farm Loan Board to be so held by said Registrar as collateral security for the bonds thus to be issued.

Acting within the provisions of this act the Chicago Joint Stock Land Bank from time to time secured the approval of the Federal Farm Loan Board and deposited farm mortgages and other securities with W. R. Campbell of St. Louis, Mo., Registrar for the district in which the Chicago Joint Stock Land Bank was located. The Chicago Joint Stock Land Bank had under proper authority issued a large amount of these joint stock farm loan bonds so secured.

In this case there was no attempt to show that the bonds held by the defendant were of any particular issue or secured by any particular and specified bonds held by said Registrar, the case being submitted on the theory, which I believe is correct, that the security held by the Registrar was so held by him for all of the bonds outstanding.

The mortgage declared upon in this suit was procured by the Chicago Joint Stock Land Bank on a loan to Charles Clark and Mary E. Clark, his wife, on or about the 20th day of February, 1923, and together with other mortgages was with the approval of the Farm Loan Board deposited with Mr. Campbell as security for the issuance of a series of joint stock farm loan bonds and has remained in his possession until the Chicago Joint Stock Land Bank was taken over by the plaintiff in this case as receiver. The evidence discloses that this plaintiff gave a receipt for all the assets of the bank at the time he assumed the receivership, took charge of all the assets of the bank by receipt separating the property in the hands of the bank and that in the hands of the Registrar. The mortgages then in the hands of the Registrar remained in his actual possession and control, as I understand the evidence, but were delivered to this plaintiff upon what was termed a trust receipt for the purpose of bringing this action.

Money collected by this plaintiff upon mortgages held by the Registrar are, in accordance with the Farm Loan Act, paid to the Treasurer of the United States and by him by accounting segregated as trust funds.

There can be no doubt under the evidence in this case, and the court so finds, that from and after its receipt by the Chicago Joint Stock Land Bank this mortgage had been held in trust for the benefit of all the holders of joint stock farm loan bonds which were issued as secured by the collateral in the hands of the Registrar. It is also apparent, and the court so finds, that the collateral security of which the mortgage sued upon in this case is a part was held in trust at the time of the commencement of this suit for the benefit of all the holders of joint stock farm loan bonds secured thereby.

With this fact question determined there remains the legal question of whether joint stock farm loan bonds may be set off at their face value as against a debt secured by a mortgage in the hands of a trustee holding such debt and mortgage for the benefit of all the holders of farm loan bonds secured thereby.

While there is no case directly in point as to this particular set-up provided by the Farm Loan Act and carried out by the Chicago Joint Stock Land Bank in the issuance of its joint stock farm loan bonds, yet the text-writers and the cases generally hold that in the administration of a trust estate the right of set-off does not exist in favor of a cestui que trust as against the trustee or vice versa. Perry on Trusts (7th Ed.) § 330, says:

"In all such suits in the name of the trustee, a debt due from the cestui que trust cannot be set off."

And in the late case of Dakin v. Bayly, 290 U. S. 143, 146, 54 S. Ct. 113, 114, 78 L. Ed. 229 the federal Supreme Court says:

"Set-off may not be allowed, for a defendant sued upon his individual debt may not avail himself for this purpose of a demand against the plaintiff held in a fiduciary capacity."

An equity court can, of course, look through the transactions and determine who are the real parties in interest and irrespective of the parties determine whether under the circumstances shown there is that mutuality of parties and rights that should warrant and require a mutual set-off.

And there are no compelling equities here in favor of the defendant Knoxville Building Company that would change the requirements of mutuality which must be established before a right of set-off of obligations may be allowed.

It seems to me that the contention of the plaintiff that the situation here presented is similar to that of a trust company which makes provision for the segregation of notes and mortgages as a trust fund held by trustees appointed by the company is correct. In those cases, so far as they have been cited by the parties, it is a general holding that a suit on a mortgage or note held by such trustees cannot be offset by deposits in the savings department of such trust company to the credit of the defendant. Lawrence v. Lincoln County Trust Co., 123 Me. 273, 122 A. 765; Lippitt v. Thames Loan & Trust Co., 88 Conn. 193, 90 A. 369.

The defendant claims that the provisions of the act and the depositing of the mortgages with the Registrar are analogous to deposits made to secure insurance policies with the state commissioners of insurance and were only for the purpose of securing any creditor of the bank against loss and a protectorate placed around the affairs and assets of the bank for the benefit of all the creditors of the bank. However, a perusal of the Farm Loan Act with reference to Joint Stock Land Banks leaves no doubt of the intention of Congress to create a trust fund to be deposited with the Registrar for the benefit of all the holders of farm loan bonds issued by the Joint Stock Land Banks. The act expressly says, that the assignments of the mortgages or other security to the Registrar are to be made to him "in trust." (12 USCA § 781.)

And the courts that have construed this act to which my attention has been called take it for granted that the mortgages and securities in the hands of the Registrar are trust funds. Brusselback v. Chicago Joint Stock Land Bank (D. C.) 1 F. Supp. 736; Id. (C. C. A.) 69 F.(2d) 598; Krauthoff v. Kansas City Joint-Stock Land Bank (C. C. A.) 23 F.(2d) 71; Id. (C. C. A.) 31 F.(2d) 75.

The defendant also relies upon the general rules which are now fairly well established that the right of set-off is one of substance and not of procedure; that debts which are mutual may be set off against each other; and that where equitable circumstances appear, a joint indebtedness may be set off as against an individual debt. However, the cases all require that before there can be a set-off there must be a mutuality of rights as well as of parties.

A well considered decision by Judge Holmes in the case of Wisdom v. Guess Dry Cleaning Co. (D. C.) 5 F. Supp. 762, 763, gives a résumé of the rules and authorities on set-off. And reciting these general rules, Judge Holmes says: "A trustee may not set off a trust deposit against a personal debt." Citing Thomas v. Potter Title & Trust Co. (D. C.) 2 F. Supp. 12.

The defendant also relies upon a line of cases holding that a mortgage or trust deed of all property of a debtor to secure the payment ratably of bonds or obligations issued by or held by numerous creditors does not, in the absence of an express stipulation or of a statute to that effect, constitute any defense to an action at law against the debtor by any of the creditors upon the bonds or primary obligations thus secured. Some cases cited by the defendant are: Kimber v. Gunnell Gold Min. & Mill. Co., 126 F. 137 (C. C. A. 8); Allan v. Moline Plow Co., 14 F.(2d) 912 (C. C. A. 8); Home Mortgage Co. v. Ramsey (C. C. A.) 49 F.(2d) 738; Bank of Commerce & Trust Co. v. Hood (C. C. A.) 65 F.(2d) 281; Craig v. Consolidated Cement Corp. (C. C. A.) 69 F.(2d) 613. An examination of the cases relied upon, however, shows that while they hold a transfer of property by a debtor as security in trust for all his creditors does not defeat any right of creditors to bring suit and obtain a judgment against the debtor, also hold that while this can be done, it does not follow that any judgment secured by any such suit may be enforced against the trust fund.

Judge Sanborn in the Kimber v. Gunnell Gold Min. & Mill. Co. Case, supra, says, in effect, that the right of the creditor under the rule above given to secure a judgment as against the debtor is not affected by the fact that a creditor could go into equity and prevent the enforcement of the judgment against the trust property. An examination of these cases, while establishing the above rules, expressly points out that a judgment could not be enforced as against the trust estate and hence the cases cited are more against the defendant's contention than in its favor.

It should be added, that in this suit the claim of an offset is not pleaded as a counterclaim, but as a defense to the action. However, even if pleaded as a counterclaim a judgment could not be obtained thereon as the suit is by a receiver and the judgment would have to be filed as a claim against the receiver.

Complainant is entitled to the relief demanded and counsel for the receiver may submit a decree providing for the foreclosure of the mortgage declared upon. Defendants except.