**TODD et al. v. RUSSELL et al.**

District Court, S. D. New York.

Dec. 30, 1935.*

* Received for publication Oct. 28, 1937.

Mack, Taylor, Spiegelberg & McCauley, of New York City (H. W. Mack and G. A. Spiegelberg, both of New York City, of counsel), for plaintiffs.

Pleasants & Lowry, of New York City (Samuel A. Pleasants, P. W. Lowry, and H. S. Duncombe, all of New York City, of counsel), for defendants Russell, Miller & Carey and Carroll G. Taylor.

KNOX, District Judge.

The history of the litigations seeking to hold the present defendants to liability is long and tortuous. Since the decision here to be made will deal with but one of the controversies between the parties, it may be of assistance to those who hereafter pass upon the remaining disputes, if what has gone before be recited at some length.

Plaintiffs Todd, Work, and Weiss, each a citizen of Ohio, are partners of the firm of J. S. Todd & Co., security dealers in Cincinnati. As such they own 5 per cent. bonds of the Ohio Joint Stock Land Bank of Cincinnati, of the par value of $10,000. That institution defaulted the bonds on September 1, 1927, and was declared insolvent, a receiver being appointed on the date last mentioned. The present action is brought by plaintiffs in their own behalf, and for the benefit of all other creditors of the bank, as their respective interests may appear.

At the time of failure, the bank had outstanding stock of the par value of $250,-000. Under the provisions of chapter 245, section 16, of the Federal Farm Loan Act, (12 U.S.C.A. § 812), the owners of such stock became individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of the bank to the extent of their respective holdings at the par value thereof, in addition to the amount paid therefor.

Defendants are the owners, in varying amounts, of stock of the bank. They have not discharged such liability as rests upon them under the aforementioned statute. In the light of the defense of laches raised to the bill of complaint, and defendants' contention that the statute of limitations of the states of residence of the respective defendants is determinative of the time within which this action can be maintained, the places of residence of the several defendants, as well as the dates of such residence, become a matter of moment. Accordingly, these should be set forth. The defendants should also be classified.

Defendants Henry Russell, Lawrence Miller, and Charles Steers composed the partnership of Russell, Miller & Carey, whose principal office was in the city of New York.

Russell has been a resident and citizen of California since December, 1927. Prior to that time he had lived in both New York and New Jersey. During 1927, Steers resided at Portchester, N. Y. The following year he went to Connecticut for a time. Returning to Portchester, he remained there until 1930, when he again took up residence in Connecticut. During these successive periods, Steers was a member of the New York Stock Exchange, and was within the city of New York on substantially every business day of the years following the collapse of the bank. Miller, at

all times in question, has been a resident of New York. Wing, likewise, is a New York resident. Defendant Pleasants is a lawyer. Prior to June 7, 1928, he resided in New Jersey. On that day he removed to New York. While a nonresident of New York, Pleasants was in this city upon substantially every business day, and amenable to service of process. Defendant Taylor lived in New York until 1934, when he removed therefrom.

Among other things, the complaint alleges that: (a) The amounts now due and owing by said land bank to plaintiff and other creditors exceed the total par value of said land bank's stock; and (b) the assets of the bank and the value of the same are unknown to plaintiffs; and no accounting of its assets and liabilities has been had, nor has any decree been made whereby the statutory liability of the bank's stockholders has been determined.

After averring various jurisdictional requirements, and setting forth that an accounting of the assets and liabilities of the land bank will be necessary in order to determine the deficiency of assets and the statutory liability of stockholders, as well as for the ascertainment of the sums to be awarded to plaintiff, and to each other creditor of the bank, and that there is no adequate remedy at law for this relief, the bill asks for an appropriate accounting in which defendants' liabilities shall be fixed, and a decree that they discharge the same for the benefit of all creditors entitled to share in a recovery.

To the pleading so summarized, the following defenses, among others, were interposed:

(1) That no accounting is necessary as to plaintiffs, because their relative rights have never been disputed and have been previously determined by: (a) Decree of the United States District Court of Ohio in Crane v. Ohio Joint Stock Land Bank; and (b) the statutory receiver upon the distribution of dividends, and that the acceptances of the dividends constitutes an estoppel.

(2) That no accounting is necessary among the defendants because the full amount of the alleged statutory liability, if any, is unquestionably due by reason of the fact that: (a) The total statutory liability is only $250,000, and the known deficiency on December 15, 1931 (the date of the commencement of this action) exceeded $500,000; (b) that the existence of a 100 per cent. liability was directly adjudicated in Crane v. The Ohio Joint Stock Land Bank.

(3) That the action is barred by the statute of limitations by reason of the fact that the cause of action is legal and a court of equity must apply the statute of limitations to a legal cause of action.

(4) That the action is barred by laches, independently of and irrespective of the statute of limitations.

(5) The defendants have other sufficient defenses not material upon the trial of this special issue.

At this point, a chronology of events, together with some comment, touching upon both former and present proceedings by which plaintiffs, through various agencies, have sought to hold defendants to accountability, should be stated.

Coincident with the declared insolvency of the bank, the Federal Farm Loan Board appointed J. S. Horton as its receiver.

On April 6, 1928, the Federal Farm Loan Board made determination that the assets of the Land Bank were less than its liabilities to the extent of more than $250,000, and assumed to lay an assessment of 100 per cent. against its stockholders. Notice of this action was personally given to holders of stock, and by publication in the Cincinnati Enquirer and Indianapolis News. Further notice to the same effect was contained in reports issued by the bank's receiver, and these were circularized among interested parties. In August of 1928, advertisements were placed in numerous newspapers calling upon bondholders and other bank creditors to file their claims.

On April 16, 1928, Horton, as receiver, first demanded of stockholders, including defendants, that they discharge their obligations to the bank. Defendants ignored the claim. Thereafter, upon January 17, 1929, C. A. Mains, who in the meantime had succeeded to the receivership, called on defendants to make payment of the claims asserted against them. Receiving no favorable response, Mains repeated his request by means of telegrams dispatched on February 4, 1929. His attorneys then came upon the scene, and on April 12, 1929, addressed a letter to Russell, Miller & Carey, insisting that they discharge their liability. Once again, the effort at collection proved futile.

Shortly thereafter Mains surrendered his receivership, and Floyd L. Rogers took his place.

Anterior to these steps, litigation having to do with the procedure by which stockholders of failed land banks might be held to their obligations had engaged the attention of the Federal Circuit Court of Appeals for the Eighth Circuit. Krauthoff v. Kansas City Joint-Stock Land Bank, 23 F.(2d) 71 (November, 1927; rehearing, February, 1928). It was there held that the bank's receiver might properly enforce the rights of creditors of the bank against its stockholders.

Thereafter, on April 2, 1928, Howard Greene, then receiver of Bankers Joint Stock Land Bank of Milwaukee, which had likewise closed its doors, began suit against the stockholders of that institution in an effort to recover upon their statutory liabilities. Two months later the District Court, in which the action had been begun, dismissed the action. On review, the Circuit Court of Appeals for the Seventh Circuit reversed the order of dismissal upon the ground that stockholders of the bank might properly be held to accountability by its receiver. Greene v. Wheeler, 29 F.(2d) 468.

Meanwhile, in April, 1929, Mains, as receiver of the trust that had been committed to his care, brought suit against Samuel A. Pleasants and Carroll G. Taylor, two of the present defendants. On advice from Chester Morrill, secretary and general counsel for the Farm Loan Board, Mains withheld legal action upon his claims against Russell, Miller & Carey. He wished to await the outcome of the litigation that had been the subject of determination in the appellate court for the Seventh Circuit, and which was then on its way towards adjudication by the Supreme Court of the United States. Pending an expression by that tribunal as to the law governing the subject matter then in dispute, the Circuit Court of Appeals for the Eighth Circuit, in Krauthoff v. Kansas City Joint Stock Land Bank, 31 F.(2d) 75, followed the ruling it had previously made, and which is reported in (C.C.A.) 23 F.(2d) 71, supra.

On November 4, 1929, the Supreme Court announced its conclusion in Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L. Ed. 160, and reversed the decision previously made by the Court of Appeals for the Seventh Circuit. The Supreme Court held that the Federal Farm Loan Board had no power to levy an assessment against stockholders of a failed land bank, and that a receiver thereof was without authority to maintain suit for the enforcement of stockholders' liability created by the Federal Farm Loan Act. Upon December 2, 1929, the Supreme Court refused to rehear the Greene Case. With this final adjudication upon procedural questions in litigations such as this, a creditors' protective committee of the Ohio Joint Stock Land Bank was formed. William C. Weiss, one of the present plaintiffs, became and continues as one of its members.

At the instance of the committee, Emilie E. Crane, on behalf of herself and all other creditors of the Ohio Joint Stock Land Bank, similarly situated with herself, started suit in February, 1930, against all stockholders of the bank (including the defendants here, who, however, were not served), to hold them in their statutory obligation. Venue was laid in the United States District Court for Southern Ohio, Western Division. On November 3, 1930, one of my former colleagues in this court was asked to appoint Rogers as ancillary receiver in this district so as to qualify him upon behalf of the bank creditors, to collect such sums as might be found to be owing from stockholders who were amenable to valid service of process within the Southern District of New York. Such application was denied.

Subsequently, and on March 4, 1931, Lincoln National Bank, acting at the behest of the creditors' protective committee, came to this court and began a representative action in equity against defendants named in the present action, and one other, in an effort to enforce payment of the claims set up in the complaint. As the causes of action were there alleged, they sounded in law rather than in equity. In consequence, and as a result of a motion made by one or more of the defendants, the action to which reference has just been made was dismissed, with leave to amend.

Advantage was not taken of the privilege thus granted. Instead, within about two weeks from the aforementioned dismissal, the suit immediately before the court was begun. Its procedural progress has been far from free of opposition and debate on the part of the litigants. A decision of Judge Bondy, entered August 1, 1932, held the action to have been properly brought in equity.

At a later date, Judge Patterson passed upon certain defenses contained in the answer to the complaint, particularly those having to do with the statute of limitations and laches. In the course of his opinion, he said ([D.C.] 1 F.Supp. 788, 789): "Federal courts sitting in equity are not bound by state statutes of limitations, although they generally use such statutes as a guide in determining whether the claims sought to be enforced are barred by laches. * * * As a defense setting up the New York statute of limitations in absolute bar of the suits, therefore, the defense is insufficient. As a defense alleging matters indicating that the claims are stale and that the plaintiffs have been guilty of laches, however, the defense is a sufficient one. Despite the label given to the defense by the defendants, I will treat it as of the latter variety, a defense of laches analogous to the state statute of limitations, and will pass on to the question whether the New York statute of limitations in a case like the present is three years or six years."

He then held that the three-year statute (Civil Practice Act N.Y. § 49) was the one to be taken into account, but declined to say whether the passage of three years would bar suit against defendants who were residents of states having a statute of limitations of a longer period than three years.

Following this decision, plaintiffs amended their complaint and set up the matters, hereinbefore outlined, relative to the maze of technicalities that have so far thwarted them in the successful pursuit of defendants, as a justification for such delay as has occurred.

With the foregoing condition of affairs as a background, Judge Coxe, on December 11, 1933, directed the issue of laches and the statute of limitations, as pleaded in the second affirmative defense in the answer of each defendant, be separately tried prior to the disposition of any other issues between the parties.

In accordance with this order, the trial came on before me. As it was about to begin, plaintiffs again amended their complaint so as to record Russell's places of residence over the years following failure of the bank, together with allegations that, under the laws of both New Jersey and Ohio, the statute of limitations applicable to the cause of action stated in the complaint is six years (1 Comp.St.N.J.1910, p. 3162, § 1; Gen.Code Ohio, § 11222).

With the considerations above set forth before me, I proceed to state my decision and the reasons therefor.

It is my thought that plaintiffs' cause of action should not be held to have become ripe for prosecution before April, 1928. Prior to that time, no reasonable ascertainment seems to have been made as to the extent of the sum by which the bank's liabilities exceeded its assets. For present purposes, it matters little, I think, that the Farm Loan Board was not authorized to assess stockholders for such liability as existed against them. The more important thing was that the receiver's administration had proceeded far enough to enable him to know that the bank could not pay its debts in full. He promptly gave notice to stockholders that they would be held to accountability. Prior to such time they might well have indulged the hope and expectation of a realization upon assets of the bank which would be sufficient to balance its debts. Under conditions as they existed, plaintiffs, had they begun suit prior to April, 1928, would have been met, doubtless, with the contention that the suit was prematurely brought, and it would not have been without merit.

If I be correct in holding that the action accrued as of April, 1928, it is apparent that the Lincoln Bank suit wherein the plaintiff was granted a right to amend its complaint was begun within the three-year period. The present litigation, as previously stated, was started within about two weeks after attorneys for the present plaintiffs elected to allow the Lincoln Bank complaint to be dismissed. The elements of time and prejudice, therefore, do not bear heavily upon defendants. And, if a balancing of equities is to control the result, the plaintiffs appear to be in the better position.

While both sides of the present controversy are in accord that a state statute of limitations is not necessarily applicable to an action that is essentially equitable in nature, defendants vigorously argue that the statute should certainly operate in their favor, inasmuch as plaintiffs might have sued them at law as well as in equity.

Without discussing the matter of concurrence of jurisdiction at law, I shall assume defendants might there have been made to respond. Usual procedure, however, would seem to indicate a suit in equity "brought in the neighborhood, in which the stockholder can be heard, and by which the assessment instead of one hundred per

cent. can be adjusted to the specific case. Terry v. Tubman, 92 U.S. 156, 23 L.Ed. 537. The stockholders are to be held only 'equally and ratably.' And, to say the least, the bill in equity is the most likely way of reaching that result." Wheeler v. Greene, 280 U.S. 49, 51, 52, 50 S.Ct. 21, 74 L.Ed. 160.

When the proper proceeding is in equity, it would seem that the court, unless constrained by binding authority, should be reluctant to hold the local statute of limitations to be an absolute bar against the assertion of plaintiffs' claim against defendants who, within the statutory period, might have been served with process in this jurisdiction.

This case is both unique and exceptional. For a long period, courts of high standing and repute were struggling with the intricacies of procedure having to do with claims such as are here. Their views were of a divergent character. Had plaintiffs, prior to November, 1929, followed the procedure indicated by the most authoritative judicial pronouncements then available, their action, in the light of the Supreme Court ruling, would have come to naught. Why, under all these circumstances, should equity regard the present claims as stale and unenforceable? Plaintiffs have not slept on their rights. On the contrary, they seem to have been most diligent, as is evidenced by what has been recited.

When Judge Patterson gave thought to the contentions of the parties on this subject matter, as I read his decision, he did not believe that the New York limitation statute, in and of itself, was enough to defeat the plaintiffs, even as the record then stood. In his opinion, the validity of the defense of laches would depend upon the facts to be revealed at the trial. His point of view becomes apparent from a perusal of Kirby v. Lake Shore & Michigan Southern Railroad, 120 U.S. 130, 7 S.Ct. 430, 30 L.Ed. 569, upon which, in part, he relied. In that case, even though jurisdiction at law and in equity was concurrent, the court declined to follow the terms of a local statute of limitations with respect to the time at which it was to begin to operate. Application was made of the rule that the date of discovery of a fraud, and not the time of its commission, would start the running of the statute. While the court held, where the statute was six years, that an action, begun seven years after the facts having to do with the fraud had come to light,

was too late and was barred, the opinion is comprehensive in its phraseology, and clearly declares the supremacy of the equitable principles of the federal courts over state statutes, which, if slavishly followed, would curtail the field within which such principles are applicable.

Judge Coxe seems to have had no thought that Judge Patterson had definitely ruled the plaintiff out of court. Had he entertained such opinion, he would not have permitted plaintiffs to set up the matters excusing the delays for which defendants, in their answers, took them to task. Nor would he have sent the parties to trial.

Such delay as is fairly attributable to plaintiffs should not bar the claims made against defendants. The latter, so far as can be seen, have suffered no real prejudice. Part of the time consumed is chargeable to the obstacles which they placed in plaintiffs' pathway. At all times, they have been aware that effort towards requiring them to discharge their statutory obligations was in process. See Southern Pacific Co. v. Bogert, 250 U.S. 483, 489, 490, 39 S. Ct. 533, 63 L.Ed. 1099; Central R. R. Co of N. J. v. Mayor of Jersey City (D.C.) 199 F. 237, 245.

If the local statute of limitations were to be applied, in a case such as this, it might, conceivably, be productive of a result whereby one stockholder of a bank, merely because he happens to reside in a particular state, could escape liability, while a codefendant from another state might be subjected to the full measure of his responsibility. It seems much more just that all stockholders, irrespective of their respective places of residence, provided they are pursued with the diligence which equity regards as reasonable, should be held "individually responsible, equally and ratably, and not for one another."

■ Another word should, perhaps, be said. In former actions sponsored by the creditors' committee, allegations were made to the effect that the assets of the failed bank were insufficient to satisfy the claims of bondholders. So far as was shown by the pleadings, the stockholders' liability might be a full 100 per cent. of their share ownership. Upon this theory, the Lincoln Bank suit was dismissed, as being triable at law. In the present action, plaintiffs disclaim knowledge of the value of the bank's assets, and seek an accounting. These changes in the existing pleadings are said to be colorable, and fraudulent, and due to

plaintiffs' wish to escape the rigidity of the limitation statute in a law action. As to this, I think plaintiffs are entitled to exoneration. When this action was begun, plaintiffs did not believe themselves to be bound by a three-year limitation statute. If any were applicable, they conceived it to be that of six years and less' time had elapsed. Moreover the Lincoln Bank litigation had been brought in equity. It had been started within the three-year period, and thus was free of the challenge that it was so begun to escape an applicable statute. Testimony taken at the hearing on the defense of laches showed that, as of the date of suit, the bank's assets had not been wholly liquidated, and the value of such as remained was more or less uncertain. It thus appears that the allegations under attack were justified.

A decree, overruling the defense of laches as set up in the answers of the respective defendants, may be submitted.