A. E. TORGESON, RECEIVER, APPELLEE, V. DEPARTMENT OF TRADE AND COMMERCE, APPELLANT.

FILED MAY 10, 1934. No. 29013.

*Paul F. Good, Attorney General*, and *Edwin Vail*, for appellant.

*Butler & James* and *Neighbors & Coulter*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MEYER, District Judge.

EBERLY, J.

This is a suit to impress a trust upon funds in the hands of the defendant, department of trade and commerce (now department of banking), to the credit of the depositors' guaranty fund. From a decree impressing such trust and permitting the plaintiff to reclaim therefrom the sum of $7,355.14, the defendant appeals.

This is a companion suit between the same parties and brought at the same time as *Torgeson v. Department of Trade and Commerce, ante,* p. 38. In both cases last referred to, it appears that between the dates of May 15, 1925, and September 8, 1927, the Bridgeport Bank was under the control of the guaranty fund commission, and was being operated by that commission "as a going concern, without regard to solvency."

Plaintiff alleges that, while it was so operated, "the secretaries of the department of trade and commerce who were in office during the period from May 16, 1925, to July 11, 1927 (notwithstanding the Bridgeport Bank was insolvent), acting in good faith, but under a mistaken idea of the proper construction of the statutory provisions applicable thereto, illegally and in contravention of law, levied assessments against the Bridgeport Bank (while wholly insolvent) to maintain the depositors' guaranty fund," and in payment of such assessments wrongfully caused to be withdrawn from the assets of this bank the sum of $7,-355.14. The last withdrawal of money so made was on April 5, 1927. A receiver for this bank was appointed on September 8, 1927, who immediately qualified and commenced his duties in that capacity. This action was commenced on January 11, 1932.

Concerning the validity of these assessments, we deem that issue not essential to a proper disposition of the case, and therefore the question will not be determined. The defense which is controlling we deem to be the statute of limitations.

In consideration of the applicability of this statute, it will be remembered that, under the provisions of our state law regulating banking, the assessments here in suit were made by the proper officer entrusted with that duty by the express terms of the statute. They were admittedly paid to an officer unmistakably designated in a similar manner. It is charged they are invalid solely because the bank, in the hands of the guaranty fund commission and being conducted by it as a going concern without regard to solvency, was actually insolvent at the time of the making of each of the challenged levies, and at the time each was paid. The department of trade and commerce (now the department of banking) takes issue with this contention. But it cannot be questioned that in the utmost good faith these assessments aggregating the sum sued for were in fact paid by the bank while in charge and under the control of the guaranty fund commission.

Under these circumstances, the good faith of all parties being admitted, fraud and concealment being neither alleged nor proved, and essentially the only mistake charged being an honest mistake in the construction of a statute, is the defense of the statute of limitations applicable and controlling?

This jurisdiction was early committed to the view that the statute of limitations is a statute of repose. *Mayberry v. Willoughby,* 5 Neb. 368. Further, "The statute of limitations is a wise and beneficial law, and does not raise a presumption of payment, but is intended to be a statute of repose." *Chapman v. Kimball,* 7 Neb. 399. See, also, *Gatling v. Lane,* 17 Neb. 80; *Goodwin v. Cunningham,* 54 Neb. 11; *Pinkham v. Pinkham,* 61 Neb. 336; *Scott v. De-Graw,* 90 Neb. 274.

The essential, inherent, legal nature of the successive receivers of the Bridgeport Bank as appointed by a proper court of competent jurisdiction, and thereby respectively created wholly independent and judicial officers of the court naming them, has already been considered in case No. 29012, a companion case of the same title, between the same parties, and covering the same period of time. We are content with the determination there made and with the principles there announced.

Appellee contends that the principles announced by this court in *City of Chadron v. Dawes County,* 82 Neb. 614, *City of Albion ·v. Boone County,* 94 Neb. 494, and *State v. Stanton County,* 100 Neb. 747, sustained by the reasoning in *New Orleans v. Fisher,* 180 U. S. 185, and *City of Osawatomie v. Miami County,* 78 Kan. 270, are controlling and necessitate the conclusion that the transactions in suit are not within the scope of our statute of limitations. This contention may not be accepted. Indeed, the obvious reply is that the instant case is not a tax suit, and does not involve the controlling elements of the tax suits which the cases cited by appellee determine. The essential issues there adjudicated are entirely different, foreign, and wholly unrelated to the issues we must determine in this liti-

gation. The analogies are too remote to be logically controlling.

The *Chadron* and *Albion* cases involved the proper distribution of the county road fund. By the general law in force during the period covered by the cases cited, it was provided: "On the last day of sitting as a board of equalization the county board shall levy the necessary taxes for the current year, including * * * for roads, not more than five mills on the dollar valuation." Comp. St. 1909, sec. 5057. By construction and later by express amendment, section 76 of the road law provided that road tax levied upon property "within cities of the metropolitan class, cities of the first and second class and villages" should be disposed of as follows: "One-half of all such tax, when collected, shall go to the county road fund, the other half, when collected, to be paid to the city or village where levied." Comp. St. 1909, sec. 5327. It was "the other half" to which the cities were entitled that was in litigation in the first two cases cited by the appellee.

In the *Stanton County* case the law in force during the period covered by the litigation (Ann. St. 1911, secs. 10094, 10095) provided substantially that the several counties of the state having patients in the state hospitals for the insane should receive notice by the state auditor's certificate as to the amount due the state for the board and care of such patients for the support of which they were respectively chargeable; whereupon the statute in terms imposed the duty and required that "the board of county commissioners (of such county) shall add such amount to the next state tax to be levied in said county, and pay the amount so levied into the state treasury." Ann. St. 1911, sec. 10095. As to the amounts in suit, it appears conceded that a state auditor's certificate had been received by Stanton county, the respective amounts thereof had been added to the state tax, and the combined amount had been collected in due course "as state tax" by the county treasurer, but, instead of being remitted to the state treasurer, were appropriated by the county authori-

ties to their own purposes under a claim that the directing statute was unconstitutional. It will be observed that in the three cases now under consideration the rights of the ultimate taxpayer were in no manner involved. No claims in his behalf were presented, considered, or decided. In each of the three cases the litigation was essentially and strictly between two municipalities. In the first two cases the causes of action on which recoveries were sought related exclusively to public funds in which there was at the time of collection substantially a joint ownership between the parties, and in all three cases there was involved the possession of public funds by public bodies under such circumstances as imposed a continuing duty to pay the same over to the other public body then complaining. Likewise, in all three cases the relief sought amounted to no more than to require the performance of a continuing public duty relating to public funds imposed by the express terms of a public statute upon one public agency for the benefit of another public agency, and as to which the general public had an actual though indirect interest. In the *Stanton County* case this court determined that the additional tax, having been assessed and collected as a state tax, was "a part of the revenue of the state within the meaning of section 7581, Rev. St. 1913;" and as the action was in effect one to recover revenue by the state from the county, the statute of limitations did not apply.

There is no claim in the instant case that the assessments in suit involve the characteristics of revenue of the state. In *City of Chadron v. Dawes County, supra,* the reasoning of this court upon which that decision proceeds is clearly set forth in the following language: "The statute of limitations is interposed as a defense. It is conceded that, if this defense can be made in a case of this kind, the defendant has allowed plaintiff all that it was legally entitled to demand. Under the law in force at the times set out, the county collected all of the road taxes. All of the taxes collected outside of an incorporated city and

one-half of the tax levied and collected upon property within the corporate limits of a city could properly be held and disbursed by the county, but the other one-half of the taxes collected upon property within the corporate limits of a city belonged to the city, and it would be the duty of the county to pay such money over to the city. Plaintiff and defendant were therefore jointly interested in that portion of the fund derived from the levy upon property within the corporate limits of the plaintiff; and, being so jointly interested, when the fund came into the possession of the county, it held one-half of it in trust for the city. The fund had been raised in the exercise of a governmental function, for governmental purposes, and, we think, was held in a governmental capacity. But whether so or not, it seems clear to us that the county held that portion belonging to the city as a public trust; that it was the continuing duty of the county to faithfully execute the trust by paying over the money, and that the statute of limitations does not apply."

This reasoning is approved in *City of Albion v. Boone County, supra,* and indeed is the embodiment of the principles announced in *New Orleans v. Fisher,* 180 U. S. 185, and *City of Osawatomie v. Miami County,* 78 Kan. 270. But the issues there determined were between public municipalities and related to public funds. The principles involved are necessarily limited by the subject-matter to which they are applied by the court, and are binding as precedents only within the scope of the issues in the determination of which they are announced.

In the instant case we are not in any manner concerned with a contest between public bodies relating exclusively to public funds, and where the relief sought is compulsion in the performance of public duties of a continuing nature. Therefore, assuming *arguendo* that the assessments here in suit were levied and collected without authority of law, it must be admitted that the injury sustained by the bank is exclusively in the nature of a private wrong. The redress to which the injured party is entitled, if any, is

redress for a private injury. It is wholly devoid of the characteristics of a public nature. It would necessarily follow that the doctrine announced in the three Nebraska decisions relied on by plaintiff has no necessary application in the instant case, and is not controlling. That certain analogies exist between the case at bar and the facts embodied in the precedents referred to may be admitted. The fallacy of the argument insisting that they are here controlling plainly appears when, by assumption, the analogies are perfected or rather made more complete.

For this purpose we may assume that the property of the Bridgeport Bank was by the proper taxing authorities taxed for an illegal or an unauthorized purpose, and the taxes so assessed were in good faith paid by the agents in charge. On these facts obviously no recovery of the taxes so paid could be had on the theory as advanced by plaintiff in the case actually presented for review. Section 77-1923, Comp. St. 1929, provides for relief in the case supposed. But its terms must be complied with. *Darr v. Dawson County*, 93 Neb. 93. The running of the statute of limitations is not prevented or tolled, and after the specified lapse of time following the accrual of the cause of action the statute of limitations affords a complete defense. This is true, not only because of the provisions of our statutes, but the general rule on the subject is:

"If there are special statutes of limitation applicable to actions for the recovery of taxes paid, and such statutes are valid, the action is barred unless brought within the prescribed time after the cause of action has accrued; otherwise, it is barred by the same lapse of time which would limit an action for money had and received between private parties." 61 C. J. 999. See, also, *Matter of Hoople*, 179 N. Y. 308.

In the instant case plaintiff's right of action is based on primary facts such as the usual and necessary allegations in the ordinary action for money had and received are ample to cover. The right to relief, if any, vested in the Bridgeport Bank involves no more. Even if the en-

forcement of this primary right because of peculiar circumstances involves the application of equitable remedies, the resulting action is still within the scope of the statute of limitations which provides that actions of the nature of the one under consideration shall be commenced within four years after the cause of action has accrued. *Murphy v. City of Omaha,* 1 Neb. (Unof.) 488. This construction is necessitated by the words of our enactment and reinforced by the policy of this legislation as early determined by this court. Plaintiff's action was therefore barred when commenced, and the district court erred in sustaining the petition and in its judgment entered thereon.

The judgment of the district court is, therefore, reversed and the action dismissed.

REVERSED AND DISMISSED.