**TODD et al. v. RUSSELL et al. (LISSEN-DEN et al., Intervenors).**
**No. 299.**

Circuit Court of Appeals, Second Circuit.
May 8, 1939.

CLARK, Circuit Judge, dissenting.

Pleasants & Donovan, of New York City (Samuel A. Pleasants, Benjamin G. Myron, and Stanley D. Schuval, all of New York City, of counsel), for appellants.

Mack, Taylor, Spiegelberg & McCauley, of New York City, for plaintiffs-appellees.

Mack, McCauley, Spiegelberg & Gallagher, of New York City (George A. Spiegelberg, of New York City, of counsel), for intervenors-appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This appeal is from a final decree in a suit in equity brought in the District Court for the Southern District of New York. The plaintiffs own certain bonds of the insolvent Ohio Joint Stock Land Bank of Cincinnati, Ohio, and are seeking to recover in behalf of themselves and all other creditors of said Land Bank as their interests may appear. The defendants are alleged owners of stock in the Land Bank and it is their liability as shareholders under the provisions of 12 U.S.C.A. § 812 that the plaintiffs are trying to enforce.

This statute reads as follows:—

"*Individual liability of shareholders:* Shareholders of every joint-stock land bank organized under this chapter shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares."

The decree from which this appeal was taken was entered only after a long struggle in the courts in which uncertainty as to the proper parties; the proper action; the scope of the statute; the time when any action accrued; and what statute of limitations, if any, was applicable all had to be determined. These questions have now been resolved in such a way that this appeal presents but two issues, viz., (1) whether the defendants are sharehold-

ers of the Land Bank within the meaning of 12 U.S.C.A. § 812; and, (2) whether, if so, the suit is barred by local statutes of limitations which would have been a bar had the action been at law instead of in equity. Though the New York statute of limitations would not be available to all the defendants, we will for present purposes treat it as the only one relied on since that will present the entire issue as to limitation statutes.

As to whether or not the defendants are shareholders within the purview of the above statute, decision must turn upon whether liability thereunder is substantially the same as that which was formerly held to be the liability of shareholders of a national banking association under Secs. 63 and 64 of 12 U.S.C.A. The language of the statutes differs somewhat. Sec. 812 imposes liability upon shareholders "* * * to the extent of the amount of stock owned by them at the par value thereof * * *"; while that applicable to national bank shareholders was, "* * * to the extent of the amount of their stock therein, at the par value thereof * * *".

This distinction is relied upon by the defendants to support the argument that Sec. 812 applies only to the beneficial owner and not to one who merely appears on the books of the bank as the owner.

The defendants were all stockholders of record on the books of the Land Bank when it was closed. This bank was organized on January 12, 1923, with a capital stock of $250,000 represented by 2,500 shares each of the par value of $100. Its principal place of business was at Cincinnati, Ohio, until it failed to meet its obligations on September 1, 1927, and was declared insolvent.

The stock then standing on the books of the Land Bank in the names of defendants Russell, Miller and Carey, who are, with defendants Steers and Wing, co-partners in the New York brokerage firm of Russell, Miller and Carey, was received by them for the account of a client. It was represented by a certificate for 200 shares which they subsequently delivered to a bank for the account of their client but there is no finding that they were not to some extent, at least, the beneficial owners as well as the record holders of the stock. Defendant Pleasants was, however, clearly only a pledgee as he received his stock as collateral security for a loan and, being entitled under the terms of the pledge to have the stock transferred to his name on the books of the Land Bank, did so.

For the purposes of this decision we shall assume that the defendants are all in the position of Pleasants for the others can stand no better than he and we think he is liable on the merits.

It is well established that under Secs. 63 and 64 of Title 12 U.S.C.A. the record holder of national bank stock, though only a pledgee, was liable; National Bank v. Case, 99 U.S. 628, 25 L.Ed. 448; Rankin v. Fidelity Trust Co., 189 U.S. 242, 23 S. Ct. 553, 47 L.Ed. 792; Kenyon v. Fowler, 2 Cir., 155 F. 107; unless the pledgee who receives the shares from his debtor for transfer has himself described as the pledgee in the new certificate issued. Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844; Rankin v. Fidelity Trust Co. supra, 189 U.S. 242, 23 S.Ct. 553, 47 L.Ed. 792.

The reasons for holding that the one who takes the stock as security for a loan but whose name appears on the books of the corporation as the owner have been stated to be estoppel; the release of the former owner from statutory liability; and the enjoyment of the rights of a stockholder to receive dividends, to vote the stock, and to exercise all the privileges of ownership, making it inequitable to permit the one who has thus become entitled to the benefits to refuse the responsibilities of a stockholder.

The provisions of 12 U.S.C.A. § 62, which require the keeping, subject to inspection by shareholders and creditors, of a full and accurate list, in the office where its business is transacted, of the names and residences of all the shareholders in a national banking association, together with the number of shares each holds, are not duplicated in the statutes relating to Joint Stock Land Banks. Because of this difference in the statutes, it is argued that the decisions above mentioned are not here controlling. But estoppel was only one basis for the above mentioned decisions and its absence in this case does not do away with the sufficiency of the others which are equally applicable here and make the analogy complete. We can attach no significance to the fact that the older statute speaks of the stock of shareholders in national banking associations as "their stock" while that of shareholders

in Joint Stock Land Banks is designated as stock "owned by them". It is as much "their" stock and stock "owned by them" in the one instance as in the other. Such a slight change in statutory language does not indicate an intent on the part of Congress to make a substantial difference in the liability imposed.

If, however, the state statute of limitations is a bar, this suit was brought too late. That issue was tried separately before hearing on the merits and it was found that the cause of action accrued in April, 1928. No one now disputes that. The local statute of limitations ran in three years thereafter and this suit was not commenced until about three years and eight months had elapsed.

Ordinarily, suits in equity are not barred absolutely by any general statute of limitations but are subject only to being dismissed for laches where by reference to some analogous limitation statute they are stale and no good excuse for the delay is shown. Yet there is ample authority to the effect that one should not be permitted to avoid the effect of such a limitation statute merely by choosing to bring a suit in equity where there is concurrent jurisdiction and an action at law has become barred. Metropolitan Nat. Bank v. St. Louis Dispatch Company, 149 U.S. 436, 448, 13 S.Ct. 944, 37 L.Ed. 799; Baker v. Cummings, 169 U.S. 189, 18 S.Ct. 367, 42 L.Ed. 711; Kelly v. Dolan, 3 Cir., 233 F. 635; Hughes v. Reed, 10 Cir., 46 F.2d 435. Even where there is concurrent jurisdiction, however, and an action at law would be barred, in New York a suit in equity is not if resort to equity is necessary to obtain complete and adequate relief. Hanover Fire Insurance Co. v. Morse Dry Dock & Repair Co., 270 N.Y. 86, 200 N.E. 589; Rundle v. Allison, 34 N.Y. 180.

Though the basis of this action is purely statutory and in that sense the relief is not strictly equitable in its nature, there is, however, no concurrent jurisdiction at law since creditors of a Joint Stock Land Bank can enforce the statutory liability of shareholders only in "an adversary suit in equity against the stockholders wherever they may be found". Christopher v. Brusselback, 302 U.S. 500, 502, 58 S.Ct. 350, 351, 82 L.Ed. 388; Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160; Brusselback v. Cago Corporation, 2 Cir., 85 F.2d 20. Since this suit of necessity was brought in equity, it is to be governed by the principles of equity rather than the inflexible rules of legal statutes of limitations. Though they do for the most part, as statutes of repose, bring about beneficial results, there are circumstances where the application of such hard and fast time limits upon the commencement of suits would not be equitable. As the local statutes are here to be used only as a guide to decision on the equitable question of laches, it becomes necessary to determine whether the plaintiffs have delayed unduly or whether they have been trying with reasonable dispatch to assert and maintain their rights.

When the Ohio Joint Stock Land Bank of Cincinnati defaulted on some of its obligations on September 1, 1927, and was declared insolvent, J. S. Horton was appointed its receiver. What followed, so far as now material, has been well stated in the opinion written by Judge Knox after the question of laches and the applicability of the statute of limitations as pleaded by the defendants was tried separately by him before the trial of other issues raised. We adopt the following excerpt from his opinion:

"On April 6, 1928, the Federal Farm Loan Board made determination that the assets of the Land Bank were less than its liabilities to the extent of more than $250,000, and assumed to lay an assessment of 100 per cent against its stockholders. Notice of this action was personally given to holders of stock, and by publication in the Cincinnati Enquirer and Indianapolis News. Further notice to the same effect was contained in reports issued by the bank's receiver, and these were circularized among interested parties. In August of 1928, advertisements were placed in numerous newspapers calling upon bondholders and other bank creditors to file their claims.

"On April 16, 1928, Horton, as receiver, first demanded of stockholders, including defendants, that they discharge their obligations to the bank. Defendants ignored the claim. Thereafter, upon January 17, 1929, C. A. Mains, who in the meantime had succeeded to the receivership, called on defendants to make payment of the claims asserted against them. Receiving no favorable response, Mains repeated his request by means of telegrams dispatched on February 4, 1929. His attorneys then came upon the scene, and on April 12, 1929, addressed a letter to Russell, Miller

and Carey, insisting that they discharge their liability. Once again, the effort at collection proved futile.

"Shortly thereafter, Mains surrendered his receivership, and Floyd L. Rogers took his place.

"Anterior to these steps, litigation having to do with the procedure by which stockholders of failed land banks might be held to their obligations, had engaged the attention of the Federal Circuit Court of Appeals for the Eighth Circuit. Krauthoff v. Kansas City Joint-Stock Land Bank, 23 F.2d 71 (November, 1927; rehearing, February, 1928). It was there held that the bank's receiver might properly enforce the rights of creditors of the bank against its stockholders.

"Thereafter, on April 2, 1928, Howard Greene, then receiver of Bankers Joint Stock Land Bank of Milwaukee, which had likewise closed its doors, began suit against the stockholders of that institution in an effort to recover upon their statutory liabilities. Two months later the District Court, in which the action had been begun, dismissed the action. On review, the Court of Appeals for the Seventh Circuit reversed the order of dismissal upon the ground that stockholders of the Bank might properly be held to accountability by its receiver. Greene v. Wheeler, 7 Cir., 29 F.2d 468.

"Meanwhile, in April, 1929, Mains, as receiver of the trust that had been committed to his care, brought suit against Samuel A. Pleasants and Carroll G. Taylor, two of the present defendants. On advice from Chester Morrill, secretary and general counsel for the Farm Loan Board, Mains withheld legal action upon his claims against Russell, Miller and Carey. He wished to await the outcome of the litigation that had been the subject of determination in the appellate court for the Seventh Circuit, and which was then on its way toward adjudication by the Supreme Court of the United States. Pending an expression by that tribunal as to the law governing the subject-matter then in dispute, the Circuit Court of Appeals for the Eighth Circuit in Krauthoff v. Kansas City Joint-Stock Land Bank, 31 F. 2d 75, followed the ruling it had previously made, and which is reported in 23 F.2d 71, supra.

"On November 4, 1929, the Supreme Court announced its conclusion in Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160, and reversed the decision previously made by the Court of Appeals for the Seventh Circuit. The Supreme Court held that the Federal Farm Loan Board had no power to levy an assessment against stockholders of a failed Land Bank, and that a receiver thereof was without authority to maintain suit for the enforcement of stockholders' liability created by the Federal Farm Loan Act. Upon December 2, 1929, the Supreme Court refused to rehear the Greene case. With this final adjudication upon procedural questions in litigations such as this, a Creditors' Protective Committee of the Ohio Joint Stock Land Bank was formed. William C. Weiss, one of the present plaintiffs, became and continued as one of its members.

"At the instance of the committee, Emilie E. Crane, on behalf of herself and all other creditors of The Ohio Joint Stock Land Bank, similarly situated with herself, started suit in February, 1930, against all stockholders of the bank (including the defendants here, who, however, were not served), to hold them to their statutory obligation. Venue was laid in the United States District Court for Southern Ohio, Western Division. On November 3, 1930, one of my former colleagues in this Court was asked to appoint Rogers as ancillary receiver in this district so as to qualify him upon behalf of the bank creditors, to collect such sums as might be found to be owing from stockholders who were amenable to valid service of process within the Southern District of New York. Such application was denied.

"Subsequently, and on March 4, 1931, Lincoln National Bank, acting at the behest of the Creditors' Protective Committee, came to this court and began a representative action in equity against defendants named in the present action, and one other, in an effort to enforce payment of the claims set up in the complaint. As the causes of action were there alleged, they sounded in law rather than in equity. In consequence, and as a result of a motion made by one or more of the defendants, the action to which reference has just been made was dismissed, with leave to amend.

"Advantage was not taken of the privilege thus granted. Instead, within about two weeks from the aforementioned dismissal, the suit immediately before the court was begun. Its procedural progress

has been far from free of opposition and debate on the part of the litigants. A decision of Judge Bondy entered August 1, 1932, held the action to have been properly brought in equity.[1]

"At a later date Judge Patterson passed upon certain defenses contained in the answer to the complaint, particularly those having to do with the Statute of Limitations and laches. In the course of his opinion, he said, D.C., 1 F.Supp. 788, 789:

" 'Federal courts sitting in equity are not bound by state statutes of limitations, although they generally use such statutes as a guide in determining whether the claims sought to be enforced are barred by laches. * * * As a defense setting up the New York statute of limitations in absolute bar of the suits, therefore, the defense is insufficient. As a defense aleging matters indicating that the claims are stale and that the plaintiffs have been guilty of laches, however, the defense is a sufficient one. Despite the label given to the defense by the defendants, I will treat it as of the latter variety, a defense of laches analogous to the state statute of limitations, and will pass on to the question whether the New York statute of limitations in a case like the present is three years or six years * * *'.

"He then held that the three years' statute was the one to be taken into account, but declined to say whether the passage of three years would bar suit against defendants who were residents of states having a statute of limitations of a longer period than three years.

"Following this decision, plaintiffs amended their complaint and set up the matters, hereinbefore outlined, relative to the maze of technicalities that have so far thwarted them in the successful pursuit of defendants, as a justification for such delay as has occurred.

"With the foregoing condition of affairs as a background, Judge Coxe, on December 11, 1933, directed the issue of laches and the statute of limitations, as pleaded in the second affirmative defense in the answer of each defendant, be separately tried prior to the disposition of any other issues between the parties.

"In accordance with this order, the trial came on before me. As it was about to begin, plaintiffs again amended their complaint so as to record Russell's places of residence over the years following failure of the bank, together with allegations that, under the laws of both New Jersey and Ohio, the statute of limitations applicable to the cause of action stated in the complaint is six years.

"With the considerations above set forth before me, I proceed to state my decision and the reasons therefor.

"It is my thought that plaintiffs' cause of action should not be held to have become ripe for prosecution before April, 1928. Prior to that time, no reasonable ascertainment seems to have been made as to the extent of the sum by which the bank's liabilities exceeded its assets. For present purposes, it matters little, I think, that the Farm Loan Board was not authorized to assess stockholders for such liability as existed against them. The more important thing was that the receiver's administration had proceeded far enough to enable him to know that the bank could not pay its debts in full. He promptly gave notice to stockholders that they would be held to accountability. Prior to such time they might well have indulged the hope and expectation of a realization upon assets of the bank which would be sufficient to balance its debts. Under conditions as they existed, plaintiffs, had they begun suit prior to April, 1928, would have been met, doubtless, with the contention that the suit was prematurely brought, and it would not have been without merit.

"If I am correct in holding that the action accrued as of April, 1928, it is apparent that the Lincoln Bank suit wherein the plaintiff was granted a right to amend its complaint was begun within the three-year period. The present litigation, as previously stated, was started within about two weeks after attorneys for the present plaintiffs elected to allow the Lincoln Bank complaint to be dismissed. The elements of time and prejudice, therefore, do not bear heavily upon defendants. And, if a balancing of equities is to control the result, the plaintiffs appear to be in the better position".

Having thus stated the situation in which the plaintiffs found themselves, he arrived at the following conclusion as to their diligence:—"This case is both unique and exceptional. For a long period, courts of high standing and repute were strug-

---

[1] No opinion for publication.

gling with the intricacies of procedure having to do with claims such as are here. Their views were of a divergent character. Had plaintiffs, prior to November, 1929, followed the procedure indicated by the most authoritative judicial pronouncements then available, their action, in the light of the Supreme Court ruling, would have come to naught. Why, under all these circumstances, should equity regard the present claims as stale and unenforceable? Plaintiffs have not slept on their rights. On the contrary, they seem to have been most diligent, as is evidenced by what has been recited."

Adopting his conclusion based on the facts as set forth, we agree that the plaintiffs have not been guilty of laches and that this defense was properly overruled.

Decree affirmed.

### CLARK, Circuit Judge (dissenting).

I think this claim is now too stale to be enforced. New York Civil Practice Act, § 49, subd. 4, includes, among the actions which must be commenced within three years after the cause of action has accrued, "an action against a * * * stockholder of a moneyed corporation, or banking association, * * * to enforce a liability created by the common law or by statute." This statute has been applied to an action in a federal court in the Northern District of New York to enforce a stockholder's statutory liability (Platt v. Wilmot, 193 U.S. 602, 24 S.Ct. 542, 48 L. Ed. 809), pursuant to the wise and settled policy whereby analogous state statutes of limitation are applied in the federal courts when there is no controlling federal statute. See Pufahl v. Estate of Parks, 299 U.S. 217, 225, 57 S.Ct. 151, 81 L.Ed. 133. The statute is specific; it is difficult to think of words more apt to cover the present case of a suit more than three years old to enforce liability of stockholders of an insolvent joint stock land bank, under 12 U.S.C.A. § 812.[1]

The ruling that the statute is not applicable resorts for support to the historic division of remedies among courts of law and courts of equity to justify that result. And hence to a statutory liability created in 1916—one essentially contractual in nature because the statute makes it a conditional obligation assumed as a part of the voluntary act of becoming a stockholder— is applied a rule developed by the English chancellors as a part of their general system of grace to suitors improperly treated in the law courts, and an explicit statute of limitations is disregarded. I would not contest that history; it served its purposes in reforming law and is a part of our glorious heritage. Nor do I question that we cannot easily or roughly repeal historical doctrines, and hence that the rule that statutes of limitation do not apply fully to purely equitable claims (Hanover Fire Ins. Co. v. Morse Dry Dock & Repair Co., 270 N.Y. 86, 200 N.E. 589) may have its appropriate scope in proper cases. But ancient rules can only apply to newly created statutory liabilities by analogy at best. And the analogy here seems to me clearly to a claim at law. Indeed, up to this time that certainly has been the view, in the precedents holding stockholders' liability subject to statutes of limitation, whether the form of action was equitable or otherwise. Carrol v. Green, 92 U.S. 509, 516, 23 L.Ed. 738; McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 46 L.Ed. 437; Hale v. Coffin, C.C., 114 F. 567, 576; Id., 1 Cir., 120 F. 470, 473; Godfrey v. Terry, 97 U.S. 171, 24 L.Ed. 944; Thompson v. German Ins. Co., C.C.Neb., 76 F. 892; Early v. City of Helena, 8 Cir., 87 F.2d 831, 832; Terry v. McLure, 103 U. S. 442, 26 L.Ed. 403. In fact, until we come to these land bank cases, we have been cited to no authorities holding otherwise as to this statutorily created obligation of stockholders. And if the liability is essentially legal, it is quite clear, according to long-settled principles, that, even though the action happens to be an equity one, nevertheless the legal limitation applies. Wallace v. Lincoln Savings Bank, 89 Tenn. 630, 648, 649, 15 S.W. 448, 24 Am.St.Rep. 625 (Lurton, J.), cited and followed in Curtis v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222; Hughes v. Reed, 10 Cir., 46 F.2d 435; Schram v. Poole, supra; Torgeson, Rec'r v. Dept. of Trade & Commerce, 127 Neb. 49, 254 N.W. 740; cf. Baker v. Cummings, 169 U.S. 189, 206, 18 S.Ct. 367, 42 L.Ed. 711; Hovenden v. Lord Annesley, 2 Sch. & Lef. 607, 630 (Eng.Ch.1806); 2 Story, Eq.Jur., 14th ed., § 705.

---

[1] A similar rule governs the claim against the California defendant herein. New York Civil Practice Act, § 55; Cal. Code Civ.Proc. § 359; Johnson v. Greene, 9 Cir., 88 F.2d 683, 684; Schram v. Poole, 9 Cir., 97 F.2d 566, 567, 572.

But the result reached here is thought necessary because the Supreme Court has held that the remedy to enforce this particular liability under 12 U.S.C.A. § 812 is a representative suit *in equity* brought on behalf of all the creditors. Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160; Christopher v. Brusselback, 302 U.S. 500, 502, 58 S.Ct. 380, 82 L.Ed. 388; cf. Brusselback v. Cago Corp., 2 Cir., 85 F.2d 20, certiorari denied 299 U.S. 586, 57 S.Ct. 111, 81 L.Ed. 432; and Holmberg v. Anchell, D.C., S.D.N.Y., 24 F.Supp. 594. I suggest that the italicized words may be omitted without change in the rule; or, in other words, that they are no part of the rule itself. For that rule is really aimed at, not the underlying nature of the stockholders' liability, but the effecting of a collection and distribution of funds "equally and ratably" (as appellees argue so forcefully, using the words employed in 12 U.S.C.A. § 812) among all the creditors. Involved is only a procedural difficulty on an issue in which the defendants are not primarily concerned and which should be solved without affecting defendants' responsibility. And there is no procedural difficulty, from lack of parties or otherwise, in establishing defendants' liability, up to the full par value of the stock where (as here) the bank is completely insolvent, or for a less amount where it is not; and the unnecessary prayer for an accounting in the complaint adds nothing. A truer indicia of the nature of a claim than any mere question of parties is whether a jury trial can fairly be had. All analogies would say that on the issue of defendants' liability to pay this money, a jury trial should be granted unless waived; on the issue of distribution of the funds recovered, whether presented in the same suit, or, as easily possible, in a separate suit, no jury trial should be had.

Now the representative suit, which originated in equity, is, of course, a neat procedural device, well fitted for the situation which the Supreme Court has found to exist with respect to this federal statute. But since code pleading developed, it has been available in all actions—legal or equitable—and hence in New York it has been in use since 1849 (McKenzie v. L'Amoureux, 11 Barb., N.Y., 516, 1851), and was therefore properly available in the federal courts under the conformity principle when this action was brought. 2 Moore's Federal Practice, § 23.02, note 13, and cases cited; Penny v. Central Coal & Coke Co., 8 Cir., 138 F. 769; Stearns Coal & Lumber Co. v. Van Winkle, 6 Cir., 221 F. 590; Cherry v. Howell, D.C., E.D.N.Y., 4 F.Supp. 597, also appearing in 2 Cir., 66 F.2d 713; Colt v. Hicks, 97 Ind.App. 177, 179 N.E. 335; 19 Corn.L.Q. 614; but see 20 Va.L.Rev. 564, supporting the old distinctions in part. Since the adoption of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the class action is fully available in all civil actions. Rule 23, fully discussed in 2 Moore, op. cit., §§ 23.01–23.09.

Hence the fundamental legal nature of this claim, *so far as the defendants* are concerned, seems to me to persist through any procedural forms or devices designed purely for the adjustment of equities *among plaintiffs*. And a wise policy calls for its application. The contrary holding blots out all statutes of limitation for this claim and leaves only the uncertain doctrine of laches, where courts are prone to look at the plaintiffs' petitionings, and not at the defendants' protection. Naturally joint stock land bank stockholders would include many borrowing farmers, for whom the farm loan legislation was devised; indeed under certain circumstances borrowers could be required to take some stock. Compare 12 U.S.C.A. § 813 with ibid. § 723(c) and § 802; G. E. Putnam, The Federal Farm Loan Act, 6 Am.Econ. Rev. 770, 781 (1916). If defendants in ordinary civil actions are entitled to protection from harassment by stale, and hence uncertain and doubtful, claims, then it is to be expected that this group of deserving persons who have always been favorites of legislatures would be entitled to similar protection. One of the lessons thoroughly taught by the recent depression is that double liability of bank stockholders is a great hardship upon those who are subject to it, without consequent gain in safety to the bank, and hence the legislative trend is now overwhelmingly toward abolition of such liability. This has now been accomplished as to national banks and as to state banks in New York, and by 1936 in at least 18 others of an original 38 imposing liability. Act of June 16, 1933, c. 89, § 22, 48 Stat. 189; Act of Aug. 23, 1935, c. 614, § 304, 49 Stat. 708, 12 U.S. C.A. § 64a; N.Y.Const. art. 8, § 7, repealed by vote of the people in 1935; N.Y. Banking Law, Consol.Laws, c. 2, § 113-a; R. W. Marquis and F. P. Smith, Double Liability for Bank Stock, 27 Am.Econ.Rev.

490, 500 (1937). Messrs. Marquis and Smith point out that the principle of double liability "today stands at its lowest point of popularity in half a century" and "is definitely losing ground," and that at the present rate "it will be a matter of only a few years until double liability provisions will have disappeared from banking regulations in the United States." The present ruling, it is submitted, goes against this trend.

Here the defendants are not even the beneficial holders of the stock, but are pledgees forced to redeem their pledges or are nominal holders; while at least the named plaintiffs are speculators who bought up the bonds they hold at 50 cents on the dollar after the bank's insolvency and who already have a profit, since the bank has paid them a 63 per cent dividend. True, they are but "representatives" of the creditors, but we may venture to believe they are not unrepresentative of those creditors who may now be suing. Ordinary statutes of limitation afford fully adequate protection to worthy suitors whose action has failed otherwise than on its merits. The New York Civil Practice Act, § 23, gives such suitors a further year in which to start their action anew. Hence Platt v. Wilmot, supra, is wise and should govern here.

But even if the doctrine of laches alone applies, I think the plaintiffs have not shown a good case. Possibly the first year and a half of delay until the Supreme Court had spoken in Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160, may be excused, though even here plaintiffs had some warning of the ultimate result by the District Court's decision forecasting it in June, 1928—a month and a half after their cause accrued; and there is a question how far one is entitled to delay his suit until other parties in another action involving another bank have settled the law. But in any event the later delay is inexcusable. It seems to be due to the time taken to perfect some voluntary organization of creditors willing to risk the chance and expense of suit. Indeed, one creditor started an action on behalf of itself and all others in this district in proper time, and then voluntarily discontinued, though leave to amend had been given. Such voluntary discontinuance prevents the operation of New York Civil Practice Act, § 23. Since this was a representative suit and amendment was freely given under the old equity rules (see Equity Rules 28, 37, 38, 28 U.S. C.A. following section 723), as now under the new rules of civil procedure (Rules 15, 21, 23, 28 U.S.C.A. following section 723c), it could have been amended to have included more representative plaintiffs if such a course was thought either necessary or desirable.

It is now almost twelve years since this joint stock land bank failed. Of course, a part of the period has been consumed by the determined efforts of the defendants to contest a levy which one can sympathize with them in considering inequitable. But I think it clear there would not have been unusual delay, except for the time needed to stimulate a pursuit corps into action. I hate to see the developing union of law and equity halted to allow this kind of suit to slip by against a statute in terms clearly applicable. I favor reversal of the decree below.